RANDAZZA | LEGAL GROUP

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| H.W., a minor, by and through her parent and next friend Phil Wells,<br><br>        Plaintiff,<br><br>v.<br><br>BREWER SCHOOL DEPARTMENT, GREGG PALMER, in his personal and official capacities, BRENT SLOWIKOWSKI, in his personal and official capacities, MICHELLE MACDONALD, in her personal and official capacities,<br><br>        Defendants. | Case No. _____<br><br><br>**VERIFIED 42 U.S.C. § 1983 COMPLAINT FOR DECLARATORY, INJUNCTIVE RELIEF, AND DAMAGES**<br><br>**JURY TRIAL DEMAND** |

This is a Civil Action brought by Plaintiff H.W., a minor, against Defendants Brewer School Department, Brewer Superintendent Gregg Palmer, Brewer High School Principal Brent Slowikowski, and Brewer High School English Teacher Michelle MacDonald.  H.W. brings her claim under 42 U.S.C. § 1983 for Defendants' violation of H.W.'s First Amendment rights, and she alleges as follows:

### THE PARTIES

1.      Plaintiff H.W. is a minor and a student at Brewer High School, an institution owned and operated by Defendant Brewer School Department. This action is brought on her behalf by her parent and next friend, Phil Wells.

2.      Defendant Brewer School Department is a public school department in Brewer, Maine.

3.      Defendant Gregg Palmer is the Superintendent of Brewer School Department and, at all relevant times, worked in Brewer, Maine.  He is sued in his official and personal capacities.

Doc ID: 119acfb42803332b192b7a9251fc3b799185e445

4.      Defendant Brent Slowikowski is the Principal of Brewer High School and, at all relevant times, worked in Brewer, Maine, as an officer and agent of Brewer School Department. He is being sued in his official and personal capacities.

5.      Defendant Michelle MacDonald is a teacher at Brewer High School and, at all relevant times, worked in Brewer, Maine, as an officer and agent of Brewer School Department. She is being sued in her official and personal capacities.

## JURISDICTION AND VENUE

6.      This is a civil action arising under 42 U.S.C. § 1983 and the First Amendment to the U.S. Constitution, thus this Court has subject matter jurisdiction over this civil action per 28 U.S.C. § 1331, and it has supplemental jurisdiction over the state law claims per 28 U.S.C. § 1367

7.      This Court has  personal jurisdiction over the Brewer School Department as it is an entity organized in the State of Maine and is headquartered in the City of Brewer, Maine, and the other defendants reside in this State.  The Court otherwise has personal jurisdiction over all Defendants pursuant to M.R.S. § 704-A(2)(A) based on their transaction of business within the State and causing the torts alleged herein and the consequences thereof to occur within this State.

8.      Venue resides in this district pursuant to 28 U.S.C. § 1391(b)(1) & (2) as the Defendants reside in this District, and the events and omissions giving rise to Plaintiff's claim occurred in this District.

## FACTUAL BACKGROUND

9.      Plaintiff H.W. is a minor who attends Brewer High School.

### A.      The Petition

10.     Brewer School Department enacted a new bathroom policy, which permits students to use the bathroom that corresponds to their gender identity, rather than their biological sex.

Doc ID: 119acfb42803332b192b7a9251fc3b799185e445

11.     H.W. and C.G. are students at Brewer High School.[2]  *See* **Exhibit 1**, Declaration of C.G. (hereinafter "C.G. Decl.") at ¶ 4.  *See also* **Exhibit 2**, Declaration of H.W. (hereinafter "H.W. Decl.") at ¶ 4.

12.     H.W. and C.G. support full civil rights, civil liberties, and equal treatment for all persons, whatever their gender identity.  Neither H.W. nor C.G. would tolerate bullying anyone on the basis of sexual identity nor sexual orientation.  *See* C.G. Decl. at ¶ 5; H.W. Decl. at ¶¶ 5-6.

13.     However, H.W. and C.G. have safety and privacy concerns when it comes to private spaces and the fact that some people take advantage of openness in the form of permissive bathroom policies in order to sexually assault girls.  *See* C.G. Decl. at ¶ 6;  H.W. Decl. at ¶ 7.

14.     H.W. was made aware of a 2021 instance in Loudon County, Virginia, at Stone Bridge High School, in which a biological male posed as a female in order to sexually assault a girl.  *See Doe v. Loudon County School Board,* Case No. 1:23-cv-01358 (E.D. Va. Filed Oct. 4, 2023);  H.W. Decl. at ¶ 8.

15.     H.W. and C.G. were then made aware that H.D., who is believed to be biologically male, had started using the girls' bathroom at Brewer High School.  *See* H.W. Decl. at ¶ 9.

16.     H.D. has a reported history of sexual assault at Brewer High School.   H.W. Decl. at ¶¶ 10-11.

17.     H.W. and C.G. drafted a petition to try to convince Brewer School Department and Principal Brent Slowikowski to change school policy to address their concerns regarding the separation of biological males and females, among other places, in bathrooms and locker rooms. A true and correct copy of the petition is reproduced below:

---

[2] Due to their age, all students are referred to solely by their initials.

Doc ID: 119acfb42803332b192b7a9251fc3b799185e445

Petition to Keep Mens and Womens Biological Spaces to Their Respected
Gender

We want to bring awareness to the fact that womens and mens public
spaces should be biologically separated, it's about the privacy and restrictions
that need to be upheld for both men and women, things such as bathrooms,
locker rooms, sports, and types of changing areas or sanitary stations should all
be based on whether you are a biological girl or boy. When these rights of privacy
are taken away from anybody it is unfair. This is a petition to keep the basic
human rights of privacy and comfort that have been around for hundreds of
years, untouched and unchanged.

*See* C.G. Decl. at ¶ 8; H.W. Decl. at ¶ 12.

18.    H.W. and C.G. distributed this petition to other students, and many students signed the petition.  *See* C.G. Decl. at ¶ 9; H.W. Decl. at ¶ 13.

19.    Support for the petition was widespread.  In fact, it spanned across genders, gender identities, and multiple belief systems.  The diversity of the students supporting it was so broad and representative that even H.D. *themself* asked to sign the petition.  *See* H.W. Decl. at ¶ 14.

20.    No reasonable person could believe H.D. was troubled by, offended by, angered by, or hurt by the petition, as H.D. asked to sign the petition.  *See* H.W. Decl. at ¶ 15.

21.    It may seem surprising that H.D. would want to sign the petition, as it might have affected *them,* but the language of the petition was non-discriminatory, lacked any bias, cruelty or prejudice, and therefore it is not surprising that H.D. did not object to the petition.

22.    In fact, H.D. expressed delight at the petition.  *See* H.W. Decl. at ¶ 16.

23.    In contrast to H.W. and C.G.'s beliefs in equality, Defendants seek to promote transgender *supremacy* in public schools, not equality.

24.    Transgender supremacy is a viewpoint that rather than trans and nonbinary persons being treated *equally*, that non-trans and binary persons must change their ways, adjust their lives, their beliefs, their needs, and set their concerns aside to accommodate, at all costs, transgender and

Doc ID: 119acfb42803332b192b7a9251fc3b799185e445

nonbinary persons. Dissent is not tolerated by trans-supremacists. When confronted with dissent, trans-supremacists engage in abusive efforts to psychologically or physically harm those who dissent from this philosophy.

25.     One form of this abuse is the "taking oneself hostage" technique – where an adherent to trans-supremacy will claim that they are suicidal or prepared to engage in self-harm if there is any dissent from their viewpoint.

26.     Another form of this abuse is to claim that anyone who dissents from the trans-supremacist viewpoint is "transphobic" or "hateful" and thus use such accusations to ostracize the dissenter or to encourage violence or other forms of abuse against those who dissent.

27.     For example, trans-supremacists sent rape threats to a student who signed the petition, to put them in fear of their well-being or safety. While H.W. supports equality, she does not support trans-supremacy. *See* H.W. Decl. at ¶ 17; H.W. Decl. at Exhibit A.

28.     The Brewer School Department, the Maine School Management Association, and the Maine Education Association (including the Brewer Education Association) adhere to a trans-supremacist viewpoint and pressure those in their spheres of influence to suppress dissent from the trans-supremacist viewpoint. *See, e.g.,* Brewer School Department Policy JB; MSMA Sample Policy JB; and MEA Racial & Social Equity Series/LGBTQ+ Issues in Public Schools.

29.     Brewer High School teacher, Defendant Michelle MacDonald, learned of the petition and informed C.G. that she would have them charged with hate crimes if they continued to let students sign the petition. *See* H.W. Dec. at ¶ 18.

30.     The Brewer High School Principal, Defendant Brent Slowikowski and Assistant Principal, Fred Lower, have adopted the trans-supremist viewpoint, and in response to the petition, they approached H.W. and C.G. and pulled them into a meeting. At that meeting, they told the

Doc ID: 119acfb42803332b192b7a9251fc3b799185e445

minors that the petition was "hate speech."  *See* C.G. Decl. at ¶ 10; H.W. Decl. at ¶ 19.

31.     In that meeting, these governmental officials and authority figures told H.W. and C.G. that the petition was like "supporting racial segregation."  *See* H.W. Decl. at ¶ 20.

32.     The Defendants' conduct threatened H.W. and C.G., who were led to believe that they would be prosecuted, criminally, for a "hate crime" or sued by the school, and disciplined by the school if they continued to circulate the petition.  *See* H.W. Decl. at ¶ 21.

33.     While someone with legal training might understand that H.W. and C.G. could not *reasonably* be prosecuted nor sued for this activity, children should not be expected to know clearly-settled law.  On the other hand, the Principal and Vice-Principal knew or should have known that their actions would have caused such fear and apprehension in H.W. and C.G., and that clearly-established law would permit the students to circulate an innocuous petition, even if that petition challenged the government's preferred viewpoint.

34.     Any person of ordinary firmness would have been intimidated into ceasing their constitutionally protected activities at that point, and H.W. and C.G. were intimidated by the government's threats of legal action and school discipline.  *See* H.W. Decl. at ¶ 22.

35.     H.W. and C.G. immediately ceased promoting the petition, and immediately went silent on any viewpoint that could be seen as challenging the trans-supremacist viewpoint.  *See* H.W. Decl. at ¶ 23.

36.     H.W. and C.G. desired to continue their petition activity, but feared doing so. *See* C.G. Decl. at ¶ 11; H.W. Decl. at ¶ 24.

37.     Thereafter, H.W. and H.W.'s father met with Superintendent Gregg Palmer and Brewer High School Principal Brent Slowikowski. H.W. Decl. at ¶ 25. *See also* **Exhibit 3**, Declaration of Phil Wells (hereinafter "P.W. Decl.") at ¶ 4.

Doc ID: 119acfb42803332b192b7a9251fc3b799185e445

38.     H.W.'s father is not an attorney.  *See* P.W. Decl. at ¶ 5.

39.     At the second meeting, Superintendent Palmer and Principal Slowikowski reiterated the Brewer School Department would not permit nor tolerate the petition being circulated.  *See* H.W. Decl. at ¶ 26; P.W. Decl. at ¶ 6.

40.     Superintendent Palmer and Principal Slowikowski implied that there would be adverse action taken against H.W., and H.W.'s father also believed that those implied threats were aimed at him as well.  *See* H.W. Decl. at ¶ 27; P.W. Decl. at ¶ 7.

41.     Given the implied threats and claims made by the Defendants, H.W. and H.W.'s father left the meeting in fear of criminal prosecution, civil action, or school discipline, or a combination of all three if H.W. and / or C.G. continued to circulate their petition.  *See* H.W. Decl. at ¶ 28; P.W. Decl. at ¶ 8.

42.     The Defendants stated that the petition constituted "hate speech" and could be a "hate crime."  *See* H.W. Decl. at ¶  29;  P.W. Decl. at ¶ 9.

43.     H.W. and C.G. desire to continue circulating their petition, but lack any knowledge of how to do so without prosecution or other punishment. *See* H.W. Decl. at ¶  30.

44.     Should the Court preliminarily and permanently enjoin Defendants' putative action and threats thereof, Plaintiff will resume circulating the petition.

45.     "The right to petition is one of  the most precious of the liberties safeguarded by the Bill of Rights and is made applicable to the states by the Fourteenth Amendment." *Nader v. Me. Democratic Party*, 2012 ME 57, P21 (internal citation and quotation marks omitted).

46.     School bathroom policy is an issue under consideration by both the Superintendent and Principal, who are executive officials of the Brewer School Department, and the Brewer School Committee, its legislative arm, and the petition was in connection with such issue, it is

Doc ID: 119acfb42803332b192b7a9251fc3b799185e445

reasonably likely to encourage them to consider or review the issue, and it is reasonably likely to enlist public participation in an effort to effect such consideration.

## CLAIMS FOR RELIEF

### *Count I*
**Violation of the First Amendment to the United States Constitution: Retaliation**
**(42 U.S.C. 1983 – First Amendment)**

47.     Plaintiff realleges each allegation in the preceding paragraphs.

48.     Defendants' threats of civil, criminal, or administrative action against H.W. on account of the Petition violated her First Amendment rights to freedom of speech and her First Amendment protected freedom to petition.

49.     Those threats have not been disavowed nor withdrawn, and thus these threats create an ongoing violation of her rights, as she wishes to continue circulating her petition, but is unable to do so without risking her liberty, civil liberties, or academic career.

50.     Defendants retaliated against H.W. for exercising her First Amendment rights to freedom of speech and freedom to petition.

51.     It is clearly established that there is a First Amendment right to petition and that students do not lose that right at the school house door.

52.     Defendants' restrictions on H.W.'s speech and petition is content-based and viewpoint discriminatory and is in violation of the Free Speech Clause of the First Amendment and the Right to Petition the Government Clause of the First Amendment.

53.     Plaintiff may recover her damages and obtain declaratory and injunctive relief against Defendants, including the natural person defendants individually and in their official capacities, for the deprivation of her rights per 42 U.S.C. § 1983.

Doc ID: 119acfb42803332b192b7a9251fc3b799185e445

54.     Plaintiff has suffered at least nominal damages due to Defendants' unconstitutional actions and is entitled to damages as a result of their actions, including, but not limited to, emotional distress and incurring legal fees.

55.     Plaintiff intends to re-circulate the petition once she no longer faces the threat of Defendants to act against her on account of circulating the petition.  Plaintiff, therefore, requires a declaration that such petitioning was lawful, constitutionally-protected, not a hate crime, and not a violation of any policies, and an injunction against Defendants from taking the threatened or any other action against her on account of the petition.

### *Count II*
### Violation of the Article I Section 4 and Section 15 of the Maine Constitution and the First Amendment
### (5 M.R.S. § 4682 Free Speech and Right to Petition)

56.     Plaintiff realleges each allegation in the preceding paragraphs.

57.     Defendants' threat of action against H.W.'s speech is unconstitutional and violates her rights to freedom of speech and petition under the First Amendment and the Maine Constitution, Art. I, §§ 4 & 15.

58.     Defendants' threats against H.W.'s speech and petition is unconstitutional and violates her rights to freedom of speech and petition under the First Amendment and the Maine Constitution, Art. I, §§ 4 & 15.

59.     Defendants retaliated against H.W. for exercising her rights to freedom of speech and expression, and freedom of petition under the First Amendment of the U.S. Constitution and the Maine Constitution, Art. I, §§ 4 & 15.

60.     It is clearly established that there is a right to petition, and that clearly established right includes petitions against governmental policies and practices.

Doc ID: 119acfb42803332b192b7a9251fc3b799185e445

61.     Defendants' restriction on Plaintiff's speech and petition rights is content-based and viewpoint discriminatory and is in violation of the First Amendment of the U.S. Constitution and the Maine Constitution, Art. I, §§ 4 & 15.

62.     Plaintiff may recover her damages and obtain declaratory and injunctive relief against Defendants, including the natural person defendants individually and in their official capacities, for interfering with her rights per 5 M.R.S. § 4682.

63.     Plaintiff has suffered at least nominal damages as a result of Defendants' unconstitutional actions and is entitled to damages as a result of Defendants' actions, including, but not limited to, emotional distress and incurring legal fees.

64.     Plaintiff intends to contribute distributing the petition once she no longer faces the threat of Defendants to act against her on account of such petition.

65.     Plaintiff, therefore, requires a declaration that her petition was lawful, constitutionally-protected, not a hate crime, and not a violation of any policies, and an injunction against Defendant Brewer School Department from taking the threatened or any other action against her on account of the petition.

## **REQUESTS FOR RELIEF**

WHEREFORE, Plaintiff H.W. asks this Court to issue and or award:

A.     A declaration that the petition was lawful, constitutionally-protected, not a hate crime, and not a violation of any policies;

B.     A preliminary and permanent injunction enjoining Defendants from interfering with Plaintiff's right to lawfully engage in constitutionally protected expression including, but not limited to, circulating her petition;

C.     Actual Damages in an amount to be determined at trial;

Doc ID: 119acfb42803332b192b7a9251fc3b799185e445

D.      Nominal Damages;

E.      Attorneys' fees and expenses under 42 U.S.C. § 1988 and 5 M.R.S. § 4683;

F.      Any further relief the Court deems appropriate.

**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by

Jury on all causes of action.

Dated:  February 28, 2024                    Respectfully Submitted,

/s/ Robert J. Morris

Robert J. Morris, II (ME Bar No. 010402)     Marc J. Randazza (*pro hac vice forthcoming*)
HOUSER, LLP                                       *Lead Counsel*
400 TradeCenter, Suite 5900                  RANDAZZA LEGAL GROUP, PLLC
Woburn, MA 01801                             30 Western Avenue
Tel: (339) 203-6498                          Gloucester, MA 01930
Email: rmorris@houser-law.com                Tel: (888) 887-1776
                                             Email: ecf@randazza.com


                                             *Attorneys for Plaintiff,*
                                             *H.W.*

Doc ID: 119acfb42803332b192b7a9251fc3b799185e445

## <u>VERIFICATION OF COMPLAINT</u>

I, H.W., am the Plaintiff in the above-captioned matter. I have reviewed the foregoing allegations in this Verified Complaint, and I hereby declare under penalty of perjury that the foregoing allegations are true and correct to the best of my knowledge and understanding.

Dated: 02 / 28 / 2024

By: _____
    H.W.

Doc ID: 119acfb42803332b192b7a9251fc3b799185e445